# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-CV-60422-SMITH/HUNT

| | |
|---|---|
| LOUIS SPAGNUOLO, an individual,<br><br>       Plaintiff,<br>vs.<br><br>AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY, CHUBB CUSTOM INSURANCE COMPANY, DEPOSITORS INSURANCE COMPANY, GERBER LIFE INSURANCE COMPANY, HARLEYSVILLE INSURANCE COMPANY, HARTFORD CASUALTY INSURANCE COMPANY, IRWIN SIEGLE AGENCY, INC., MARKEL AMERICAN INSURANCE COMPANY, MARKEL INSURANCE COMPANY, NATIONWIDE INSURANCE COMPANY OF AMERICA, NATIONWIDE MUTUAL INSURANCE COMPANY, PHILADELPHIA INDEMNITY INSURANCE COMPANY, SAFEPOINT INSURANCE COMPANY, TRUMBULL INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS, FTI CONSULTING, INC. and JOHN DOE(S), known person(s)/corporation(s),<br><br>       Defendants.<br>_____ | |

**PLAINTIFF'S REPLY TO OPPOSITION TO VERIFIED EMERGENCY MOTION FOR RESTRAINING ORDER PURSUANT TO FLA. STAT. 895.05(6) AND/OR INHERENT POWERS REGARDING (1) ATTEMPTS TO BREACH COMPUTER DATABASES; (2) CYBER-ATTACKS WHICH INTERFERE WITH SCHEDULED HEARINGS; AND (3) TO PROHIBIT TRANSMISSION OF THREATENING MESSAGES IMPLYING HARM TO COUNSEL'S INFANT CHILD [D.E. 51]**

    **COMES NOW**, Plaintiff, LOUIS SPAGNUOLO, ("Plaintiff" or "Spagnuolo"), and

undersigned counsel, as Plaintiff's agent, Jay L. Farrow, hereby file this Reply To Defendants'

1

Joint Opposition [D.E. 58] Response in Opposition to Plaintiff's First Verified Emergency Motion for Restraining Order Pursuant to Fla. Stat. §895.05(6) and/or this Court's Inherent Powers, and in support thereof, state as follows:

## ADDITIONAL FACTS

## ARGUMENT AND MEMORANDUM OF LAW

Preliminarily, as now the harassment described in the June 21, 2024 Emergency Motion has exponentially expanded such that Plaintiff, his counsel as agent, are requesting this Court enter a very limited Emergency Restraining Order forthwith as there now appears to be a clear and present danger for which immediate action is necessary. Even in haste, this Reply sets for the reasoning for this limited order at this time until this Court can enter a ruling upon the First and Second Emergency Motions for protective order.

At present, human voice calls directly to undersigned's legal assistant, his brother and other staff member of the law firm, have indicated that there are matters that are of such urgent nature that if the demand is not met to speak to either them or undersigned, the "urgent matter" will be referred someplace. In fact, the law firm's legal assistant asked for her personal information in threatening tones, and they have increased to nearly four in the last hour. The undersigned's entire immediate family, including his parents, brother and wife are now receiving these phishing calls and text messages at robust healthy pace. On Monday, undersigned counsel discovered that his paralegal's credit card has been compromised and nearly $1300 in fraudulent charges have happened in the last week, some dating back to June 11 and which purchase a special software that was, in fact, used to clone his domain and send emails from this firm which went to undersigned and others.

And while undersigned's entire teams are doing our very best to follow emergency procedures for a hurricane, this new activity this morning follows the complete disconnecting of the malware which allowed Defendants to hack into the firewall, and it appears that their desperation has turned into something beyond panic as their phishing emails may have uncovered that, as suspected, FTI Consulting's Crisis Management Operation for their Clients Heath Ritenour, John Ritenour and Insurance Office of America breached and removed photographs of another infant, this time a then 13 year old baby girl who undersigned and another attorney in Gainesville represented pro bono in early 2023 to get her insurance to cover the transplant operation.

The theft of these photographs is presumptive violation of HIPPA and the same was reported, as was the dangers of interfering with the medical director of pediatric transplant's private cell when she is on call this week, and constantly receiving messages which are illegal to read or retain. Undersigned had warned about this in his previous Motions and while Defendants' Joint Response claimed that there's "nothing to see here" and having computer problems does not warrant relief, others beg to differ and a correspondence to this court or other action is soon forthcoming to request that any copies of the photos of this infant's pre-op condition, or any records associated therewith be returned immediately.   "K" is almost 3 and doing will, however, that cannot excuse the theft of pictures which were never meant for public consumption but are now more collateral damage to a Crisis Advisory Firm's Operation gone out of control.

Moreover, due to the fact that undersigned is married to the medical director of the pediatric transplant unit, and has personal knowledge as to this issue, as is said "babies die on good days" and phishing emails and phone calls to the attending director private cell number are interfering with lifesaving work – that is a fact.

All of these recent develops, happened or were discovered after the First Motion was Filed on June 21, 2024, and frankly, after reading the Defendants' Joint Response, it is clear from their obtuse, cavalier and completely out of touch tone that some of them believe that this Honorable Court does not have the power to fashion a remedy to this behavior. In fact, they cite inapplicable case law as to the requirements for injunctive relief, which are inapplicable here as Plaintiff is requesting relief through one or both legal theories set forth in the First Emergency Motion.

In summary, on June 21, 2024, Plaintiff and undersigned sought narrowly tailored relief to have Defendants cease and desist from: (1) sending Plaintiff's counsel photographs holding his new born on the day he was born, which was twenty one months ago to his personal cell phone as under the totality of the circumstances, the technological skill required to send the same from a "Verified Number" with specific photos could only have been accomplished with the knowhow and the money to pull that off; (2) from sending egregiously disruptive communications such as those photos, scores of phishing emails especially imitating a judicial assistant hours before a hearing or messages that undersigned's twitter account was hacked 1 minute before hearings; (3) using the fruits of gaining some access to Paralegal Stephanie Serrano computer to break into the law firm's pacer account such that the same prevented the filing of documents; and (4) since undersigned and his team had continued to receive phishing emails subsequent to the June 17, 2024 hearing, that in addition to ceasing the communications relative to the photographs, that any otherwise illegal activity to break into or through Plaintiff's law firm's computer systems be restrained and that a protective order be in place.

After years of litigating with the Defendant Carrier Appointees, Heath Ritenour, John Ritenour and Insurance Office of America, if nothing else, Plaintiff and undersigned learned two very important lessons: (1) brinksmanship pays out in spades to the perpetrator only if the recipient

reacts and swings back; and (2) no matter what, focus on the issues before the court that are at issue at this juncture.

The First Emergency Motion was verified by undersigned as an officer of this Court, upon personal knowledge. In their Opposition, Defendants are correct, there were no exhibits attached to the motion. However, what was required under the Local Rule, and for what was necessary to obtain a narrowly tailored restraining order or a protective order, were sufficient.

In fact, in *Bee Line Entertainment,* 791 So.2d 1197 (Fla. 5th DCA 2001), Florida's 5th District Court of Appeal found that the use of affidavits which would otherwise be hearsay, can be relied upon in issuing a narrowly tailored order pursuant to Florida's RICO Statute, Fla. Stat. 895.01 et. seq. Here, Plaintiff argues that this Court's local rules requiring a sworn certification provides even greater weight to undersigned's sworn testimony, as he is also an officer of this Court and his personal experiences during his two clerkships at the Miami-Dade State Attorney's Office in 1999 and 2002, make him fully aware of what was expected of him under this extremely unprecedented circumstances.

That said, Defendants would have this Court ignore what Plaintiff and undersigned counsel were requesting in the First Motion, which was not a constructive trust, a prejudgment writ or any "freeze" on money. Plaintiff and his counsel requested a very straight forward and narrow restraining order to prevent FTI, the Carrier Defendants or Heath Ritenour and IOA from breaking into the firm's computer system and to refrain from breaking into any device known to belong to undersigned's team. In other words, the 13 very specific occurrences since May 28, 2024, that have never happened to undersigned's office in 16 and ½ years, and the new circumstances and facts respectfully warrant an immediate order to provide a stop gap until this Court can review the second motion. Given that all Defendants have to do is stop the phishing calls, the text message

with photos from the first few hours of his son's birth, it is exactly asking them to behave and be accountable as they would otherwise be expected to be. Their argument of "it occurred in the past and future injunctive can only look to future harm" also falls off the path.

And, whether this Court choses the mechanism of Florida's RICO statute or its inherent powers, Defendants' argument as to a lack of standing and power to fashion a remedy for a very short period until this Court decide the First and Second Emergency Motion together is completely without merit and only services to bolster undersigned's argument that they are arguing important but not the critical issues. At this juncture, Defendants went ahead and filed the photos with this Court which undersigned had chosen to do in a state court matter in a failed attempt to reschedule an in person hearing on June 4, 2024 after receiving the first Verified Call the day before, June 3, 2024. Certainly, that intimate moment was not part of Plaintiff's ligation strategy up to July 3, 2024, and since it is one of the things undersigned has managed to get right in his life, its not simply coincidental that it is now enshrined in a court file.

As to the photo, and the manner it was sent via direct call to undersigned's personal cell phone and, the more challenging part, texting the photo at the same time. Notably, in both in the June 12, 2024 email undersigned sent to Mr. Oprison (which he confirmed he never replied to) and alleged in the Emergency Motion, hearsay or not, the issue was raised (1) that the event occurred and occurred more than once (however, the record of the call remains, but the photo disappeared at some point because it appears that it was not clicked on like the first photo); and (2) the receipt was less than 24 hours before two major hearing in two of undersigned's cases, one of which happened to be upon Appointees Motion to Dismiss in Plaintiff's lawsuit against them pending in Seminole County; and (3) the receipt of the photo and phishing emails caused undersigned to act

6

in the best interests of his family, Clients and law firm causing substantial disruption and now because of new issues, down to a crawl.

After five days, Defendants had time to discuss the allegations and not one of them came out of their meeting and said that they meet, conferred and discussed those allegations, and that in good faith, they could testify that Plaintiff was incorrect as to them having a role in this operation.

Defendants Response begins with rhetoric about Plaintiff and undersigned, states that there is no proof and nearly makes a denial of all the conduct, yet not one single Defendant's corporate representative, not one of their executives, thought it necessary to swear under oath that "they didn't do it."  Remarkable then, but understandably at the same time from a personal knowledge perspective, Defendants' emerging voice, Mr. Oprison's Affidavit did not contain a sworn denial of undersigned's sworn statement before this Court whom has practiced in this Court for over 19 years.  As to any "denial", as to what occurred to either Plaintiff, undersigned or his staff, there was none.  Mr. Oprison's concession that he did not respond to Plaintiff's counsel raising these issues on June 12, 2024, Defendants reasoning is paradoxical in that had he responded to the June 12, 2024 email to offer a denial, or had he saw that undersigned spent hours speaking to FTI, the Appointees and some of the Carrier Defendants' counsel prior to filing the Amended Complaint precisely because he had evidence, some of which he shared, of frankly the most incredibly shocking facts alleged in the Amended Complaint.

Undersigned literally did everything he could to get "the other side of the story" in this case because the facts are indeed "wild", and Plaintiff instructed his counsel to do so in an effort to avoid creating the very event that FTI gets retained routinely to handle.

From April 16 through May 28, 2024, undersigned texted, emailed, and even offered to travel to Washington D.C. to go over the evidence, but he was ignored. In fact, there was absolutely no

7

substantive response then – nor were there any text messages, scores of phishing emails, breaches into Ms. Serrano's computer, breaches into the firm's pacer account, attempts to break into Plaintiff's FDFS account or several warnings a minute prior to a hearing that a social media account had been completely hacked. And Defendants' response completely fails to provide this Court with anything, which is rather surprising under the circumstances. Indeed, if even a scintilla of what undersigned testified to had merit, or if none of it had any merit whatsoever, then somewhere in those five days an individual acting on behalf of the companies might have taken a few minutes to testify and perhaps stated they "did something" to investigate the claim, such as a search of their internal systems or speaking with key personnel.

Simply put in several respects, the Carrier Defendants association and participation in the RICO Enterprise relates to precisely the issue of failing to perform a separate investigation into each of their appointees upon appointment and every two years upon reappointment as to their compliance with the Insurance Code and certifying their character and trustworthiness to the FDFS without doing their statutorily described duties pursuant to Fla. Stat. 626.451.

And while it not yet ripe, the issues presented in the Second Emergency Motion are generally the similar and recited herein the discoveries on July 23, 24, and 25, wherein Plaintiff, undersigned and his staff discovered that the perpetrators had stolen and charged over $1,300 on one staff member's credit card, and that the charges on June 11 and 12 and beyond were for a software which allows a threat actor to procure dominion over the law firm domain name and use it to send emails as if undersigned or his staff was sending out the emails, as well as "google storage" space to onboard data.

The threat actors here accomplished malicious goals, and Defendants response argues that undersigned is not a party to these proceedings, thus, this Court lacks power to enter any relief at

undersigned's request.  Defendants argue that hearsay does not meet the correct standard of proof upon which this Court can rely, however, the case law is clear that this Court may grant a temporary restraining order, even without notice, upon the undersigned's sworn statement.   Defendants also claim that Plaintiff failed to meet the injunction standard, attaching matters from those other cases and completely side stepping the collateral yet direct harm to undersigned's wife.  However, pursuant to Fla. Stat. 895.05(6), this Court does not have to conduct a hearing, if it finds that there is a great risk of imminent harm or damages.   Of course, Defendants did not concede an inch, and predictably failed to say much of anything, because they knew today would be hell for undersigned and his staff to coordinate the filing of his Reply in that there has been four to five times the amount of activity today that on any other, which is precisely the pattern Plaintiff as demonstrated to this court prevents, or requires substantial more work, to complete the same tasks.  They may think this is war, and FTI may think this is a spy novel, but this has turned into an unprecedented assault where they know the wheels of justice turn slower than their rapid response teams.

In candor, what has happened here has caused pain, trauma and a drain on other court's resources, and the law firm's team is fighting for our clients while some of my staff are fighting to not have to pay over $1,300, part of which was to pay for the software call TZLA to allow the hackers to use our domain to send out emails.

Indeed, when a crisis management team uses tactics made for a nation state upon a civil law firm, with their high-profile former agents, there usually is no chance.  The undersigned acknowledges his team and his wife for remaining committed to ensuring that all parties have their day in court.

WHEREFORE: In accordance with the above, Plaintiff Louis Spagnuolo and his counsel, Jay L. Farrow and Farrow Law, P.A., respectfully request for an emergency restraining order be

entered forthwith and without delay on the limited basis for Defendants, their agents, contractors or those within their control, or the Carrier Defendants' control to cease any further attempts to break into Plaintiffs' devices or FDFS Insurance Account, to hack into Farrow Law's computer system, cease the phishing emails and text, and cease the phone calls and texts that follow containing the pictures discussed herein. Plaintiff and undersigned request that this Court's order include a provision that it be served upon counsel to be delivered to the proper corporate representative and thereafter a certificate of service be filed And that the bond set, be $1.00, as Plaintiff is not seeking anything other than to cease the extrajudicial intimidation campaign.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 27, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

Respectfully submitted,

**FARROW LAW, P.A.**
*Attorneys for Plaintiff*
1 Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
Telephone: (954) 252-9818
jay@farrowlawfirm.com
service@farrowlawfirm.com

BY: **/s/Jay L. Farrow, Esq.,**
   JAY L. FARROW, ESQ.
   Florida Bar No. 625213